ROSENTHAL v. COMMISSIONER OF IN-
TERNAL REVENUE.

No. 127, Docket 22463.

United States Court of Appeals
Second Circuit.

Argued March 11, 1953.

Decided June 24, 1953.

Henry Epstein, New York City (Hays, Wolf, Schwabacher, Sklar & Epstein, Edwin D. Hays, and Daniel P. Hays, all of New York City, on the brief), for petitioner.

Harry Marselli, Sp. Asst. to Atty. Gen. (H. Brian Holland, Asst. Atty. Gen., and Ellis N. Slack, Sp. Asst. to Atty. Gen., Washington, D.C., on the brief), for respondent.

Before AUGUSTUS N. HAND, CHASE, and CLARK, Circuit Judges.

CLARK, Circuit judge.

The taxpayer, Paul Rosenthal, petitions for review of a decision of Judge Disney in the Tax Court, reviewed by the entire court, 17 T.C. 1047, in so far as it determines a deficiency of $16,983.17 in his gift tax for 1946 and rejects his claim of overpayment of that tax in the amount of $160,-212. In the same decision the court found a deficiency of $23,194.37 in Rosenthal's gift tax for 1944, but neither party has petitioned for review of this portion of the decision. At issue here is the taxability of certain obligations undertaken by Rosenthal toward his children in connection with his separation and subsequent divorce from his estranged wife. The basic facts were found by the court as stipulated by the parties and are not in dispute.

On July 26, 1944, Rosenthal entered into a separation agreement with his wife which contained a series of provisions for the education, care, support, and maintenance of their two children, Jill, then 20 years old, and Sue, aged 14. In these the taxpayer undertook: (1) To pay his wife for the benefit of the children $10,000 per annum for each daughter until she reaches the age of 21 or marries or until the wife dies; (2) To pay each child during her lifetime after she becomes 21 or marries, the sum of $8,000 annually until the death of the wife and $6,250 annually thereafter; and, if Rosenthal's mother dies during his lifetime, (3) To set up a trust for each child then living in the amount of $150,000, the income to be payable to the child for life, and upon her death the principal payable to her issue then living or, in default of issue, as the child may by will appoint, and (4) To pay to each of the children (or to the wife for the benefit of a minor child) an additional $3,000 annually until the death of the child or of the wife. The separation agreement also provided that, in the event of divorce, it should become a part of the decree or be considered "an agreement incident to such divorce"; its effectiveness, however, was not conditioned on the occurrence of a divorce. On Sep-

tember 18, 1944, taxpayer's wife did secure a Nevada divorce, and the July 26 agreement was expressly adopted by the court and made a part of its decree. The value of the taxpayer's obligations toward his children assumed in that agreement, as of both July 26 and September 18, 1944, was stipulated between the Commissioner and the taxpayer to be $499,340.98.

In 1945, Rosenthal sought to amend the separation agreement to translate so far as possible the annual payments due the children into one funded payment. The obligation to create trusts for them had already matured, since Rosenthal's mother died on November 19, 1944; and on May 14, 1945, the elder daughter, Jill, had reached the age of 21. Attorneys on both sides conducted the negotiations with the assistance of an accountant who calculated the value of taxpayer's existing obligation to make annual payments to both daughters, as of October 1, 1945, to be $357,000 under the Actuary's or Combined Experience Table of Mortality with interest at 4 per cent—the table then used by the Commissioner—or $453,000 under the Combined Annuity Mortality Table with interest at 3½ per cent, which the accountant regarded as "a more commercial table." Adding to these figures the obligation to create trusts at a face value of $300,000, the alternative computations of the worth of taxpayer's commitments become $657,000 or $753,000. The parties sought to retain the fair equivalent of these undertakings and ultimately reached agreement on what they considered a suitable modification on March 15, 1946. In lieu of the payments prescribed by the earlier agreement, the taxpayer was to establish on April 1, 1946, a trust for each daughter in the amount of $312,500, and to pay each during her lifetime $3,000 annually until the death of the wife and $1,500 annually thereafter. He also agreed to pay each child $5,021.33 as her "share of the income earned and allocable to the trusts provided for" in the original agreement. To differ from that agreement, these provisions were to become effective only upon appropriate amendment of the divorce decree, which was promptly ordered by the Nevada court on March 29, 1946. The total obligation assumed by the taxpayer under

the new agreement was valued by the Commissioner at $729,737.67.

From 1944 through the first quarter of 1946, the taxpayer made all the direct payments called for by the original agreement, but did not actually set up the trusts upon the death of his mother. Taking the position that a gift tax became due only as non-exempt payments were made, he did not report any gifts to the children in 1944, since they were then both minors whom he was under an obligation to support; in 1945, however, he reported the payments made to Jill after she became 21. The payment—in the amount of $2,750—made to Jill for the first three months of 1946 under the old agreement was likewise reported. In addition, the taxpayer reported in his 1946 return payments made during that year under the new agreement amounting to $637,292.66.[1] A gift tax of $160,212 was paid on the $640,042.66 total of 1946 payments.

The Commissioner determined that the taxpayer should have included in his taxable gifts for 1946 the actuarial value in that year of the future annual payments to be made to both daughters under the revised agreement. In his notice of deficiency, the Commissioner valued the payments due Jill at $45,215.91, and those due Sue at $45,979.10. Accordingly, he added $91,195.01 to the taxable gifts and deducted therefrom $1,500[2] for the 1946 payments to Jill already reported. A deficiency of $39,848.36 was consequently assessed.

Seeking redetermination of this assessment in the Tax Court, the taxpayer contended not only that there was no additional tax due for 1946, but that he was entitled to refund of the $160,212 in taxes already paid, since none of the 1946 payments were properly taxable in that year. Two separate arguments were made in support of this claim. First, taxpayer contended that the 1946 agreement giving rise to these payments was made for an adequate and full consideration, namely, surrender of the children's rights under the 1944 agreement. Second, he argued that, since the 1946 agreement became effective only upon amendment of the divorce decree, payments thereunder were in discharge of a decretal obligation, and hence not taxable gifts. In addition to vigorously disputing both these contentions, the Commissioner countered on the first with the argument that, if the gifts made to the children were not taxable in 1946, a gift tax should have been paid on them in 1944 when the original agreement was executed. Since the taxpayer's 1944 gift tax return was also before the Tax Court in connection with the tax due on payments to his wife under the same 1944 agreement, the Commissioner maintained that adoption of taxpayer's first contention should result simply in a corresponding increase in his 1944 gift tax deficiency.

The Tax Court, however, deemed it unnecessary to examine this theory, for it rejected the taxpayer's two principal arguments in a comprehensive opinion by Disney, J., reviewed by the court. But it did agree with the taxpayer on the subsidiary point that the present worth in 1946 of the payments to be made to the younger daughter, Sue, during her minority, to the extent of $10,000 per annum, should not be included as taxable gifts, since these were in discharge of taxpayer's obligation to support his minor child. The 1946 gift tax deficiency was therefore reduced to $16,983.17, and this is the decision for which review is sought here by the taxpayer. The remaining part of the decision, for which neither party has sought review, is not immediately relevant here, since it determined a deficiency of $23,194.37 in the taxpayer's 1944 gift tax on the payments to his wife in that year.

The two principal contentions pressed by the taxpayer in the Tax Court also form the mainstay of his argument here; cer-

---

1. This figure comprises $625,000 for the two trusts set up under the 1946 agreement, plus the direct payment of $2,250 to Jill under that agreement, and also includes the $10,042.66 paid both children as their "share of the income earned and allocable to the trusts" provided for in the 1944 agreement.

2. As mentioned above and discussed later in this opinion, this figure should have been $2,250.

tain additional subsidiary claims not raised below will be discussed later. We may consider at the outset his interesting argument that his 1946 undertakings to make payments to or for the benefit of his children were wholly immunized from gift taxation because effective only upon incorporation into the divorce decree. For this proposition he relies chiefly on Harris v. C. I. R., 340 U.S. 106, 71 S.Ct. 181, 95 L.Ed 111, which held a settlement of marital property rights between husband and wife, operative by its terms only on entry of a divorce decree, to be exempt from gift taxes. The basis for this decision was the Court's holding that the settlement was founded not on a voluntary promise or agreement, but on the command of the divorce court, instructed by state law to decree a just and equitable disposition of the parties' property. Hence the arrangement was deemed in effect to be for "an adequate and full consideration in money or money's worth," I. R.C. § 1002, 26 U.S.C. § 1002, the Court analogizing it to a transaction "in the ordinary course of business" which, under Treas. Reg. 108, § 86.8, satisfies the statutory requirement of a consideration to support the tax exemption. See also C. I. R. v. Converse, 2 Cir., 163 F.2d 131, 174 A.L. R. 199.

The rationale of both the Harris and Converse decisions rests basically on the divorce court's power, if not duty, to settle property rights as between the parties, either by adopting their own agreement as in the Harris case, or by having the matter litigated as in the Converse case. We do not find this rationale applicable to a decree ordering payments to adult offspring of the parties or to minors beyond their needs for support—the only payments with which we are now concerned, since

that part of the taxpayer's undertakings necessary for the support of his children during their minority is concededly not taxable. See Helvering v. U. S. Trust Co., 2 Cir., 111 F.2d 576, certiorari denied U. S. Trust Co. of New York v. C. I. R., 311 U. S. 678, 61 S.Ct. 45, 85 L.Ed. 437; C. I. R. v. Weiser, 10 Cir., 113 F.2d 486. While neither the Nevada statute, Nev. Comp. Laws §§ 9462, 9463 (Supp.1931–1941),[3] nor interpretive decisions indicate the precise limits of the divorce court's authority in this area, courts of other jurisdictions operating under similar statutes have been restricted in their power to make awards of property to children to amounts appropriate merely for the maintenance of minor children. Fitch v. Cornell, C. C. D. Or., 9 Fed. Cas. page 172, No. 4,834; Thiessen v. Moore, 105 Ohio St. 401, 137 N.E. 906. Awards to children beyond their needs for support during minority have been held enforceable where based upon a contractual agreement between the parties to the divorce. Dunham v. Dunham, 189 Iowa 802, 178 N.W. 551; Worthington v. Worthington, 207 Ark. 185, 179 S.W.2d 648; see also Hayn v. Hayn, 162 Kan. 189, 175 P.2d 127; Sedam v. Sedam, Ohio App., 78 N.E.2d 914; but see Price v. Price, Tex.Civ.App., 197 S.W.2d 200. That is the situation here. But since such a decree provision depends for its validity wholly upon the consent of the party to be charged with the obligation and thus cannot be the product of litigation in the divorce court, we do not consider the rationale of the Harris decision applicable to the present case. We therefore conclude that the arrangements here made for the taxpayer's daughters beyond their support during minority do not obtain exemption from the federal gift tax by simply receiving the court's imprimatur. The similar result reached in Hooker v. C. I. R.,

3. So far as pertinent these sections provide:

§ 9462: "The court, in granting a divorce, shall make such disposition of, and provision for, the children, as shall appear most expedient under all the circumstances, and most for the present comfort and future well-being of such children; * * *."

§ 9463: "In granting a divorce, the court may award such alimony to the wife and shall make such disposition of the community and separate property of the parties as shall appear just and equitable, having regard to the respective merits of the parties and to the condition in which they will be left by such divorce, and to the party through whom the property was acquired, and to the burdens, if any, imposed upon it for the benefit of the children. * * *"

5 Cir., 174 F.2d 863, and Converse v. C. I. R., 5 T.C. 1014, affirmed C. I. R. v. Converse, supra, appears to us a correct interpretation of the law and not in conflict with the more recent decision in the Harris case.

This brings us to the question when the obligation undertaken by the taxpayer became taxable and whether there was in 1946 adequate and full consideration for the promises made in that year so as to take them out of the category of taxable gifts. In Harris v. C. I. R., 2 Cir., 178 F.2d 861, reversed on other grounds, 340 U.S. 106, 71 S.Ct. 181, 95 L.Ed. 111, we held that a binding promise to make a gift becomes subject to gift taxation in the year the obligation is undertaken and not when the discharging payments are made. The Seventh Circuit followed our decision on this point in C. I. R. v. Copley's Estate, 7 Cir., 194 F.2d 364. This view of the law was likewise adopted by the Commissioner and the Tax Court in the instant case in determining that a gift tax was due in 1946 on the then value of the future annual payments to be made to the taxpayer's daughters under the 1946 revised agreement. The Commissioner refused, however, to accord similar treatment to the promises made in 1944—and hence to view their surrender as consideration for the 1946 undertakings —because part of the taxpayer's 1944 commitment was contingent on the death of his mother during his lifetime. With this we cannot agree. The obligation undertaken by the taxpayer in the 1944 agreement, which was irrevocable without consent of the wife and the daughter affected once she became of age, at all times had an ascertainable value, since the stipulated contingency was susceptible to actuarial appraisal, even though it might conceivably never have come about. Robinette v. Helvering, 318 U.S. 184, 63 S.Ct. 540, 87 L.Ed. 700; see also C. I. R. v. Maresi, 2 Cir., 156 F.2d 929. The Commissioner indeed implicitly conceded this point when he stipulated the value of the taxpayer's obligation to his children under the 1944 agreement at the time of execution at $499,340.98. The possibility of valuation by actuarial tables distinguishes the present case from City Bank Farmers Trust Co. v. Hoey, 2 Cir., 101 F.2d 9, holding that payments made pursuant to court orders were taxable when made, since the court's orders were subject to modification at any time. See Harris v. C. I. R., supra, 178 F.2d at page 865. Thus the taxpayer's original promise here was taxable in 1944, and its surrender by the children in 1946 clearly constituted a valuable consideration for the new promise he then made.

Whether release of the 1944 obligation constituted "adequate and full consideration in money or money's worth" so as completely to exempt the 1946 promise from gift taxation under I. R. C. § 1002, 26 U.S. C. § 1002, is of course another question. Treas. Reg. 108, § 86.8, referred to above, provides that "a sale, exchange, or other transfer of property made in the ordinary course of business (a transaction which is bona fide, at arm's length, and free from any donative intent), will be considered as made for an adequate and full consideration in money or money's worth." The Supreme Court's observations on this provision in the Harris case, 340 U.S. at page 112, 71 S.Ct. at page 185, 95 L.Ed. 111, are equally apposite here: "This transaction is not 'in the ordinary course of business' in any conventional sense. Few transactions between husband and wife ever would be; and those under the aegis of a divorce court are not. But if two partners on dissolution of the firm entered into a transaction of this character or if chancery did it for them, there would seem to be no doubt that the unscrambling of the business interests would satisfy the spirit of the Regulations. No reason is apparent why husband and wife should be under a heavier handicap absent a statute which brings all marital property settlements under the gift tax." We infer from this statement that even a family transaction may for gift tax purposes be treated as one "in the ordinary course of business" as defined in this Regulation if each of the parenthetical criteria is fully met.

C. I. R. v. Wemyss, 324 U.S. 303, 65 S. Ct. 652, 89 L.Ed. 958, 156 A.L.R. 1022, suggests no contrary rule. It holds merely that the absence of donative intent as

known to the common law will not alone prevent a transfer from being subject to gift taxation. See also Merrill v. Fahs, 324 U.S. 308, 65 S.Ct. 655, 89 L.Ed. 963; Farid-Es-Sultaneh v. C. I. R., 2 Cir., 160 F.2d 812, 816. The Court noted in the Wemyss case, 324 U.S. at page 307, 65 S. Ct. at page 654, 89 L.Ed. 958, that the Tax Court had there in effect found that the transfer "was not made at arm's length in the ordinary course of business." In the instant case the Tax Court made no findings—express or even clearly implied—as to whether the surrender of the 1944 promise for the new 1946 obligation was a bona fide arm's length transaction without donative intent on the taxpayer's part. The taxpayer suggests on brief that the court found the requisite elements of an ordinary business transaction as defined in the Regulation when it said in its Findings of Fact: "In 1945 petitioner consulted attorneys who endeavored to amend the agreement of July 26, 1944, through negotiation, in order to translate the annual payments to the children into one funded payment, in so far as that was possible, and to translate what they thought was the equitable equivalent of the annual payments into one lump sum payment." 17 T.C. at page 1054. This finding deals only with the parties' original intent in undertaking the 1945–1946 negotiations. While there is nothing in either the findings or the opinion to suggest that the court doubted the successful attainment of this objective, we cannot deduce a finding on so essential an issue from the court's silence. See Helvering v. Rankin, 295 U. S. 123, 55 S.Ct. 732, 79 L.Ed. 1343. The case must therefore be remanded to the Tax Court for determination of this question. If the court then finds that the 1946 agreement does represent the fruits of a bona fide arm's length transaction without donative intent, the 1946 deficiency will of course be expunged in toto and the taxpayer's refund claim allowed.

If, however, consideration of the criteria stated in the Regulation leads the court to the conclusion that there was here no transfer in the ordinary course of business as thus defined, it should proceed to determine the extent to which surrender of the chil-

dren's rights under the 1944 agreement did constitute consideration for the taxpayer's 1946 undertaking. A gift tax is due only on the difference between this amount and the value of the new promise. I. R. C. § 1002, 26 U.S.C. § 1002. The Tax Court did not consider this issue when the case was originally before it because the court believed that the taxpayer did "not suggest that there was some consideration but less than full and adequate." This seems to us too technical and restrictive a view of the argument presented to the court. Excerpts from that argument indicate that, while the taxpayer's main thrust was naturally enough to establish that there was no tax whatever due on the 1946 promise, he did not foreclose the alternative possibility of reduced tax liability because there was some consideration, though less than "adequate and full."

■ The taxpayer presents two final objections to the Tax Court's disposition of this case. The first deals with the court's valuation of the younger daughter's right to support during her minority. In the Tax Court, taxpayer successfully contended that this non-taxable portion of his obligation should be valued at the actuarial worth of the $10,000 annual payments he undertook in the original separation agreement to make to his daughters during their minority; this the Commissioner calculated to be $44,695. While not challenging this computation, the taxpayer now contends for the first time that the minor daughter's right to support amounted to $67,626.25, the stipulated value of all payments due her during minority under the 1946 agreement. Had this contention been presented to the Tax Court, it is of course possible that the taxpayer's method of valuation might have been adopted. That is, the Tax Court might have held that the obligation of support consisted of both the annual payment and the income from the trusts to be set up. But since the taxpayer was content to limit himself to an equally plausible theory —albeit less favorable to his case—we see no justification for requiring relitigation of this issue on remand.

■ Characterizing his final objection as a "small claim," the taxpayer points out

that, apparently through an oversight, the Commissioner and the Tax Court credited him with only $1,500 for payments made in 1946 under the revised agreement and already reported in that year, rather than $2,250 as actually paid and reported. The Commissioner implicitly concedes the merit of this claim—as to which there is indeed no doubt—but resists correction because of its tardiness. It is hardly necessary to observe that the error should have been called to the attention of the Commissioner and the Tax Court in the first instance and at an earlier date. But this matter requires no further hearing or consideration by the Tax Court; and since the Commissioner will unquestionably have to submit a new Computation for Entry of Decision when the court completes its disposition of the case, we see no reason why this error must be perpetuated. Hence an appropriate correction should be made before entry of the final decision.

There still remains for consideration the Commissioner's alternative contention that the taxpayer's 1944 promise should be taxed in that year if its release constituted consideration for the later revision. We have already indicated our view that the obligation assumed by the taxpayer in the original separation agreement was taxable in 1944 in the amount of its actuarial value at the time of execution. The rather knotty question to be decided now is whether the Tax Court's disposition of the taxpayer's 1944 return has become final under I. R. C. § 1140, 26 U.S.C. § 1140, and hence can no longer be modified, since there was no petition for review explicitly addressed to the 1944 determination. As pointed out above, the Commissioner originally presented his argument for imposing a tax in 1944 to the Tax Court as an alternative to taxing the entire 1946 undertaking in the later year. Since the court upheld the 1946 tax it disposed of the alternative theory by saying simply: "Considering our conclusion above set forth, it is unnecessary to examine such alternative contention." 17 T.C. at page 1063. There was thus no explicit decision as to this contention, although, as we have seen, the actual decision entered by the Tax Court computed deficiencies in the gift tax for both 1944 and

1946. The Commissioner filed no petition for review and in fact expressed his acquiescence in the decision as made. Ruling 1952—13—13842, 1952-1 Cum.Bull. 4. The taxpayer refrained from filing his petition for review until the end of the statutory period and then carefully limited it to request review of the determination as to the 1946 tax alone. The Commissioner now says there seems "no possibility of any doubt whatsoever" that the payments made and to be made must be taxable "as gifts in 1944, if not in 1946," and asks us to increase the deficiency in the 1944 tax as he requests and without remand. But he does not brief the point whether the issue remains open, while the taxpayer presents authorities that the decision for 1944 has become final.

We rather regret that the case for the Government has not covered this point, for our own researches have tended only to support the taxpayer's contention. There would seem much to be said for the argument that, since the taxpayer by his petition for review has removed the basis for the decision below, the case should go back to the Tax Court in the same status it was before the decision, so that that court could consider all contentions then made. An earlier case appears so to hold, Champlin v. C. I. R., 10 Cir., 78 F.2d 905; and the argument is made in a strong dissent by Justice Stone for himself and Justice Cardozo in Helvering v. Pfeiffer, 302 U.S. 247, 58 S.Ct. 159, 82 L.Ed. 231. But unfortunately the decision in the latter case, by Justice Brandeis, seems rather directly the other way. For it affirmed our decision, Pfeiffer v. C. I. R., 2 Cir., 88 F.2d 3, that the Commissioner, without filing a cross petition for review, could not save a part of the deficiency he had obtained in the Board of Tax Appeals by showing that the receipts in question, if not taxable as income, were nevertheless partially taxable as capital gains. This holding seems in accordance with the rather strict views of the Supreme Court; thus see cases cited by L. Hand, J., in In re Barnett, 2 Cir., 124 F.2d 1005, 1014. The tax case of Le Tulle v. Scofield, 308 U.S. 415, 422, note 9, 60 S.Ct. 313, 84 L.Ed. 355, is to the same effect. See also Penfield Co. of California v. S.

512

E. C., 330 U.S. 585, 594, 67 S.Ct. 918, 91 L.Ed. 1117.

██ Since, as these and other authorities show, an appellee may urge any matter appearing in the record in support of a judgment, a conceivable argument might be based upon adding the two deficiencies assessed below to constitute a single judgment, thus justifying an increase in the 1944 deficiency not to exceed this total; the 1946 deficiency could merely be transferred in part at least to the 1944 tax to sustain the previous over-all holding. But this seems precluded, if for no other reason than by the operation of the settled rule that each taxable year is to be treated as a separate unit for assessment and decisional purposes—a rule reaffirmed in the latest decision allowing some consideration of matters outside the year, but merely as a means toward finding the particular year's toll. Arrowsmith v. C. I. R., 344 U.S. 6, 73 S. Ct. 71. This in fact was the holding in Wilson v. C. I. R., 42 B.T.A. 1254, on the issue here presented. We do not see, therefore, grounds upon which to sustain the Commissioner's contention; but, since we have before us strictly only his request that we assess the deficiencies claimed in the 1944 tax, a request we are constrained to deny, we need not try to foreclose him from presenting new light to the Tax Court, if he can find any. Our decision will be limited, therefore, to a reversal of the assessment of the 1946 tax and a remand for its reassessment.

Reversed and remanded to the Tax Court for further proceedings in accordance with this opinion.