**William Paul ALEXANDER and Viola C. Alexander**

**v.**

**The UNITED STATES.**

**No. 260–79T.**

United States Court of Claims.

Jan. 28, 1981.

John S. Campbell, Albuquerque, N. M., attorney of record, for plaintiffs. John D. Laflin and Associates, Albuquerque, N. M., of counsel.

Kevin B. Shea, Washington, D. C., with whom was Asst. Atty. Gen. M. Carr Ferguson, Washington, D. C., for defendant. Theodore D. Peyser and Donald H. Olson, Washington, D. C., of counsel.

Before FRIEDMAN, Chief Judge, and NICHOLS and BENNETT, Judges.

### ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

FRIEDMAN, Chief Judge:

The question in this federal tax refund suit is whether the plaintiffs (the Alexan-

---

ders) made a taxable gift of the amount of a mortgage on real property to their children and grandchildren when, in connection with the sale of the property, which they all owned jointly, the Alexanders agreed that they would continue to make the payments on the existing mortgage. The case is before us on cross-motions for summary judgment. We heard oral argument. We hold that there was no taxable gift of the amount of the mortgage and that the plaintiffs are entitled to recover.

## I.

The Alexanders owned an apartment complex in Albuquerque, New Mexico. On or before April 1, 1976, they gave an undivided 36 percent interest in the property to their children and grandchildren ("donees"). The property was subject to a mortgage, on which the Alexanders were personally liable, and the gift was made subject to that mortgage. At the time of the gift, the value of the property was $860,000.

On April 1, 1976, the Alexanders and the donees sold all their interest in the property to the Blacks for $908,000. The sale was made with a so-called wrap-around mortgage, under which the Alexanders remained liable on the underlying mortgage. At that time, the unpaid principal of the mortgage was $258,849. The terms of the sale were that the Blacks would pay $125,000 in cash and $783,000 in monthly installments of $7,044.88. Paragraph 3 of the real estate contract provided that the property was being conveyed subject to the mortgage and that

[t]he Purchaser does not assume or agree to pay said mortgage and the Owners, PAUL ALEXANDER and VIOLA C. ALEXANDER, his wife, agree to be bound and liable on said mortgage and agree to satisfy the monthly payments due on said mortgage out of payments received by them, pursuant to this Real Estate Contract.

The payments on the mortgage by the Alexanders were to be made through an escrow agreement under which the Blacks made the monthly payments to an escrow agent, who in turn made the mortgage payments pursuant to the following provision of the escrow agreement:

Sixty-four percent (64%) [of payments received from the purchasers] shall be credited to PAUL ALEXANDER and VIOLA C. ALEXANDER, his wife, by transmitting a mortgage payment of TWO THOUSAND SEVEN HUNDRED FIFTY–EIGHT AND 26/100 DOLLARS ($2,758.26) to the Metropolitan Life Insurance Company .... The balance [*i. e.,* the remaining 36% without any reduction for mortgage payments] shall be delivered to [named donees and trustees for donees].

The Alexanders, the donees, and the Blacks all signed both the real estate contract and the escrow agreement.

Although in their federal gift tax return for 1976, the Alexanders did not reduce the fair market value of the property given the donees by 36 percent of the amount of the mortgage, on October 2, 1978, they filed a timely claim for a refund reflecting such reduction. On June 15, 1979, the Alexanders filed suit in this court for a refund, the Commissioner having failed to act on their request within 6 months.

## II.

■ The general rule is that, for gift tax purposes, a gift of property subject to a mortgage is valued at the excess of the fair market value of the property over the amount of the mortgage outstanding at the time of the gift. *Janos v. Commissioner,* 11 T.C.M. (CCH) 1211 (1952). *See generally Powe v. Commissioner,* 25 T.C.M. (CCH) 218, *aff'd,* 389 F.2d 46 (5th Cir. 1967), *cert. denied,* 393 U.S. 826, 89 S.Ct. 88, 21 L.Ed.2d 97 (1968); *Jackman v. Commissioner,* 44 B.T.A. 704 (1941), *acq.* 1941–2 C.B. 7. The amount of the mortgage is deducted from the market value of the property even when the donor agrees to make the mortgage payments, because no consideration exists for the donor's promise to do so, which therefore is not a legally binding obligation. Each mortgage payment is treated as a separate taxable gift when

actually made. Rev.Rul. 78–362, 1978–2 C.B. 248. *See generally Housman v. Commissioner,* 105 F.2d 973 (2d Cir. 1939), *cert. denied,* 309 U.S. 656, 60 S.Ct. 469, 84 L.Ed. 1005 (1940).

Both parties agree that if the property had not been sold, the gift would be valued at fair market value less the outstanding mortgage. The government contends, however, that the real estate contract and accompanying escrow agreement imposed a binding legal obligation upon the Alexanders to continue to make the mortgage payments, which the donees could enforce, and hence that the fair value of the property would not be reduced by the amount of the mortgage. The government asserts that "a taxable gift is made at the time that a binding obligation to make future payments is incurred." It relies upon such cases as *Rosenthal v. Commissioner,* 205 F.2d 505 (2d Cir. 1953), and *Commissioner v. Copley's Estate,* 194 F.2d 364 (7th Cir. 1952), where in different circumstances the court held that a legally binding promise to make future payments constituted a present gift of the amount of those payments.

In the present case, however, we conclude that the Alexanders' agreement to continue to make the mortgage payments did not constitute a legally binding promise that the donees could enforce. Accordingly, the value of the Alexanders' gift to the donees did not include the amount of the mortgage.

Both before and after the sale the Alexanders, and only the Alexanders, were liable to make the mortgage payments. The only difference was that after the sale the Alexanders' obligation to do so ran not only to the mortgage but also to the Blacks. In agreeing with the Blacks to continue to make the mortgage payments, the Alexanders assumed no new obligation but merely agreed to carry out their existing one. Although this promise undoubtedly was a factor in the Blacks' agreement to purchase the property, we hold as a matter of contract interpretation that the promise was not intended to change the Alexanders' legal obligation to or relationship with the donees. Under New Mexico law, a promise to do what one is already obligated to do by law or contract is not consideration. *Hale v. Brewster,* 81 N.M. 342, 467 P.2d 8 (1970); *In re Quantius' Will,* 58 N.M. 807, 277 P.2d 306 (1954).

Moreover, as we interpret the contract, the Alexanders' obligation to make the mortgage payments was not absolute, but was conditional upon the payments the Blacks were required to make under the real estate contract. The escrow agent is required to make mortgage payments only "out of payments received by the Alexanders." If the Blacks fail to make a payment, the Alexanders have no obligation under the real estate contract or escrow agreement to do so.

"A gift must be complete, subject to no condition precedent, or it is void, is no gift at all." *Dresselhuys v. Commissioner,* 40 B.T.A. 30 (1939), *acq.* 1939–2 C.B. 11. *See also Tower v. Commissioner,* 148 F.2d 388, 390 (6th Cir. 1945), *rev'd on other grounds,* 327 U.S. 280, 66 S.Ct. 532, 90 L.Ed. 670 (1946); *City Bank Farmers Trust v. Hoey,* 101 F.2d 9 (2d Cir. 1939); 5 J. Mertens, The Law of Federal Estate and Gift Taxation 146–47 (1959). There is an exception that if the value of a gift subject to a condition precedent can be actuarially determined, it is presently taxable. *Rosenthal v. Commissioner, supra,* 205 F.2d at 509.

Because of the condition precedent to the Alexanders' obligation to make the mortgage payments, there was no present gift of the amount of those payments that was subject to tax. The value of the future mortgage payments is not actuarially determinable because there is no way in which the probability of the Blacks making their payments can be actuarially calculated. This case is therefore unlike *Rosenthal,* where the contingency upon which the gift depended—the death of the donor's mother during his lifetime—was susceptible to actuarial determination pursuant to life expectancy tables.

The defendant, stressing that the donees were parties to the real estate contract and escrow agreement, contends that "[i]t is a

well-established principle of contract law that every party to a tripartite contract is bound by the promises made by him, and any party to such a contract may insist upon the performance of every such promise made for his benefit" and "that the promise relating to the mortgage payments was made for the benefit of the donees, and they have the unquestionable right to enforce that promise." The law, however, is not that broad. A leading case, which the defendant cites, announced the following standard:

> Whether the right or privilege conferred by the promise of one party to a tripartite contract belongs to one or both of the other contracting parties depends upon the intention as gathered from the words used, read, so far as they are ambiguous, in the light of the surrounding circumstances. Every party to such a contract is bound only to the extent of the promises made by him, and any party thereto may insist upon the performance of every promise made to him, or for his benefit, by the party or parties who made it. The mere fact that there are three parties to the agreement does not enlarge the effect of any promise, except as it may extend the advantage to two persons, instead of one, where that is the intention.

*Berry Harvester Co. v. Walter A. Wood Mowing & Reaping Machine Co.*, 152 N.Y. 540, 46 N.E. 952, 955 (1897).

Thus, the mere fact that the donees signed the agreement is not controlling; they may have enforceable rights under some of its provisions and not have enforceable rights under other provisions. The critical inquiry is whether the parties to the agreement intended to give the donees the right to enforce the Alexanders' obligation to make the mortgage payments.

On its face, the mortgage payment provision of the real estate contract created an obligation of the Alexanders that ran only to the Blacks, not to the donees. It stated that "[t]he Purchaser" did not "assume or agree to pay" the mortgage and that the Alexanders "agreed to be bound and liable on said mortgage." The escrow agreement provided that 64 percent of the payments made by the Blacks was to be credited to the Alexanders, out of which the mortgage payments were to be made, and that the remaining 36 percent of the Blacks' payments was to be delivered to the donees without any reduction for mortgage payments.

The government, which filed a cross-motion for summary judgment, has not provided any evidence that the parties to the agreement intended to give the donees the right to enforce the Alexanders' obligation to make the mortgage payments, or that the Alexanders' undertaking to do so was a factor that induced the donees to join with the Alexanders in selling the property. Moreover, the limited extent of the Alexanders' obligation to make the mortgage payments—they were required to do so only out of the amounts they received from the Blacks—further indicates that the parties did not intend to give the donees the right to enforce that obligation. In the circumstances, the Alexanders' promise gave the donees no significant benefit since if the Blacks defaulted on their payments under the real estate contract, the Alexanders would still remain liable to make the mortgage payments pursuant to their preexisting obligation under the mortgage.

In sum, there is no indication that the parties to the real estate and escrow agreements intended to give the donees the right to enforce the Alexanders' promise to the Blacks that the Alexanders would continue to make the mortgage payments out of the payments they received from the Blacks. The Alexanders, therefore, made no binding legal commitment to the donees to make these payments. The amount of the mortgage is to be deducted from the fair market value of the property in valuing it for present gift tax purposes.

## CONCLUSION

The plaintiffs are entitled to recover. Their motion for summary judgment is granted and defendant's cross-motion is denied. The case is remanded to the Trial Division to determine the amount of recovery under Rule 131(c)(2).