**BABCOCK & WILCOX CO. v. PEDRICK.**

United States District Court
S. D. New York.
July 5, 1951.

John F. Dooling, Jr., of New York City, for the plaintiff.

Irving H. Saypol, U. S. Atty., and Henry L. Glenn, Asst. U. S. Atty., both for the Southern District of New York, New York City, for the defendant.

HOLTZOFF, District Judge (sitting by designation).

The principal problem presented in this case is the determination of the proper method to be used for calculating excess profits taxes under the law as it existed in 1942 and 1943.

This action is brought against the estate of a deceased Collector of Internal Revenue to recover alleged over-payments of income taxes for the years 1942 and 1943. The facts are not in dispute and the decision of the case depends solely on the construction and application of the pertinent statutes. Both sides have moved for summary judgment. Consequently, the controversy is in shape for final disposition.

The question to be decided is what was the proper method for calculating the excess profits taxes due from the plaintiff for the years 1942 and 1943. The applicable statutes provide two alternative modes for computing excess profits taxes. One is known as the income basis, which, in substance, uses the average net income of the taxpayer for a specified base period as the foundation for arriving at excess profits, 26 U.S.C.A. § 713. The second formula may be called the invested capital basis, which, as its name indicates, in effect employs a specified percentage of the invested capital as the normal profits, any income above that amount constituting excess profits.

In preparing its tax returns for 1942 and 1943, the plaintiff computed its excess profits taxes by the first of these alternative methods, namely, on the basis of its income

for a base period. The Commissioner of Internal Revenue ruled that the invested capital method should have been used, and imposed an assessment for an additional income tax based on a re-computation according to the latter method. The plaintiff claims that it had the right to use the income method. The issue is whether the plaintiff had the option to make this choice.

It should be observed at this point that 26 U.S.C.A. § 710(a)(1)(B) comes into play. That section contains a provision that the aggregate corporate income and excess profits taxes shall not exceed 80% of the corporate surtax net income. The income of the plaintiff was such that except for this limitation, the aggregate income and excess profits taxes would have exceeded 80% of the surtax net income and, therefore, had to be reduced to the 80% maximum. The plaintiff's total tax liability, therefore, is not affected by the additional assessment, but results merely in a re-distribution or a reallocation of the total tax liability as between income and excess profits taxes. The question has, however, a practical import because the 10% post-war refund, 26 U.S.C.A. § 780, is computed on the excess profits tax, without regard to the income tax. Consequently, it it to the plaintiff's advantage that as much as possible of the total taxes due be allocated to the excess profits tax, rather than to the income tax.

■■■ The determination of which of the two alternative methods should be used for computing the excess profits tax, is governed by Section 712(a) of 26 U.S.C.A., which reads as follows: "In the case of a domestic corporation which was in existence before January 1, 1940, the excess profits credit for any taxable year shall be an amount computed under section 713 or section 714, *whichever amount results in the lesser tax under this subchapter* for the taxable year for which the tax under this subchapter is being computed. * * *" (Emphasis supplied.) A reading of the foregoing section inescapably leads to the conclusion that no option is conferred on the taxpayer to select the method for computing the excess profits tax. On the

contrary, the statute requires the use of that method which results in the lesser tax. The Act is not ambiguous and, consequently, the discussion of this question might well end at this point.

The plaintiff advances the somewhat technical argument that the words in Section 712,—"the tax under this subchapter" —do not refer to the excess profits tax, but to the aggregate amount of income and excess profits taxes as limited by section 710 (a)(1)(B). "This subchapter", however, is subchapter E, which is entitled,— "Excess Profits Tax". All of the sections of the subchapter deal with various aspects of the excess profits tax. Section 710 likewise relates to the excess profits tax, and in addition prescribes a maximum limitation on the sum total of income and excess profits taxes. Obviously, therefore, "the tax under this subchapter" referred to in Section 712, is the excess profits tax.

It is urgently argued by plaintiff's counsel that it was the intent of the Congress to enlarge rather than to restrict the right of the taxpayer to make an election of the method of computation, which had been conferred upon him by an earlier statute. If, however, a statute is clear and unambiguous, there is nothing to construe. The expression of the legislative will should control and should be applied as written. Recourse may not be had to extrinsic aids to construction under such circumstances. This is the situation presented in this instance.

■■■ Even if, however, the Court accepted the invitation of plaintiff's counsel to explore the legislative history of the Act, the ensuing analysis would fail to support the plaintiff's contention. Prior to the Revenue Act of 1942, which amended Section 712 to read as quoted above, this section expressly authorized the taxpayer to make an election to compute the amount of tax either under Section 713 or 714. By the amendment of 1942, the right of election was abrogated and the Congress directed the use of whichever method of computation resulted in a lesser tax. The Report of the Senate Committee on Finance concerning the 1942 amendments, express-

ly stated that the proposed amendments provided "that the credit shall be the one resulting in the lesser tax" (Senate Rept. No. 75, 77th Cong. 1st Sess., 1941).

Plaintiff's counsel argues with some degree of cogency that the amendment to Section 712 was intended to benefit the taxpayer by diminishing tax liabilities, and that a diminution of taxes was its sole object. True, diminution of the excess profits tax was an object of the amendment to Section 712. Paradoxically, however, the plaintiff seeks to use the method which would result in a higher tax, in order to secure a larger post-war refund. There is no warrant in the legislative history for concluding that such relief to the taxpayer was within the contemplation of the Congress.

In the light of the foregoing considerations, the Court reaches the conclusion that under Section 712, as amended in 1942, the taxpayer had no right to elect the method of calculating excess profits taxes, but that it was mandatory to employ the formula which resulted in the lesser tax. It follows hence that the Commissioner's action in re-assessing the excess profits taxes and the income taxes for 1942 and 1943, was proper.

■■ The second question presented in this litigation involves the method of computing interest. The Commissioner's action resulted in an additional assessment of income taxes and a credit for an overpayment of excess profits taxes. The Commissioner imposed an interest charge on the first item and allowed a credit of interest on the second. The interest charged against the plaintiff is, however, greater than the amount allowed to him on the over-assessment. This result was due to the fact that interest on deficiencies is calculated from the date prescribed for the payment of the tax to the date of the assessment of the deficiency, or to the thirtieth day after the filing of a waiver, which was done in this case, Sec. 292 (a); while interest allowed to the taxpayer on an over-assessment is calculated from the date of over-payment to the date of the additional assessment against which the credit is taken, Sec. 3771(a). In this instance the difference between the two methods of computing interest resulted in a charge of interest against the plaintiff in a greater amount than that credited to him. In this action the plaintiff also seeks to recover this excess.

The Court is of the opinion that in respect to interest the plaintiff's position is well founded. Obviously, although the Commissioner's audit of the returns resulted in what is technically called "an assessment of a deficiency" in respect to income taxes, and an allowance of overpayments in respect to excess profits taxes, in essence the Commissioner's action involved solely a redistribution of the tax liability as between income tax and excess profits tax, since the aggregate amount of the taxes was not changed. Actually there is no deficiency and no over-payment, but merely a reallocation of items within the total amount of the taxes, which remains unchanged. No money changed hands. The Government was not deprived of the use of any money. To charge the taxpayer with additional interest under the circumstances is obviously unfair and inequitable. The Government does not dispute the fact that an injustice results from the application of the interest provisions to this situation, but suggests that the remedy is with the Congress. The Court disagrees. Tax laws are no exception to the principle that all statutes must receive a reasonable and sensible construction and one that does not lead to unjust or absurd results. "The letter killeth, but the spirit giveth life". The action of the Commissioner should be construed as not levying a deficiency or allowing a refund of an over-payment, but merely as an allocation of items within the aggregate tax liability. Under the circumstances no interest is payable to either party.

Motions for summary judgment will be disposed of as indicated in the foregoing opinion. The counterclaims will be dismissed.

Settle order on notice.