**STANDARD ROOFING & MATERIAL CO. v. UNITED STATES.**

No. 4458.

United States Court of Appeals Tenth Circuit.

Oct. 22, 1952.

John E. Marshall, Oklahoma City, Okl., for appellant.

Robert E. Shelton, Oklahoma City, Okl. (Ellis N. Slack, Helen Goodner and Louise Foster, Washington, D. C., were with him on the brief), for appellee.

Before HUXMAN, MURRAH and PICKETT, Circuit Judges.

MURRAH, Circuit Judge.

The taxpayer, Standard Roofing and Material Company, filed a claim for refund in the amount of $8,806.52, based upon the contention that the Commissioner erroneously collected taxes and interest in that sum for the taxable year 1942. From a judgment of the trial court sustaining the Commissioner, the taxpayer has appealed. The facts are not in dispute.

In its income tax return for the year 1942, the taxpayer reported total income and excess profits tax of $143,750.78, which was timely paid to the Collector of Internal Revenue for the State of Oklahoma. On September 5, 1944, the Associated Companies of Roofing and Sheet Metal Contractors, a joint venture composed of taxpayer and two other groups, entered into a renegotiation agreement with the Secretary of War, in which it was agreed that excessive profits in the amount of $150,000.00 had been realized by the joint venture during the year 1942, and that this amount should be refunded to the United States under Section 403 of the Sixth Supplemental National Defense Appropriations Act, 1942, 56 Stat. 245, 50 U.S.C.A. Appendix, § 1191. This Section provides in material part: "In eliminating excessive profits the Secretary shall allow the contractor or subcontractor credit for Federal income and excess profits taxes as provided in section 3806 of the Internal Revenue Code." Section 3806, Title 26 U.S.C. provides in effect that the amount of excessive profits to be repaid to the United States shall be reduced by the amount of income taxes paid thereon in a prior year. Taxpayer's share of the $150,000.00 excessive profits was $50,000.00, and in an action brought by the United States against the joint venturers in the United States District Court for the Western District of Oklahoma in September, 1948 to collect the $150,000.00, it was held that the taxpayer was entitled to a tax credit of $41,320.00 paid on the $50,000.00 reported as income for 1942.

Pursuant to a routine review in 1945 of appellant's tax returns for 1942, the Commissioner declared a deficiency tax of $45,050.35. Assessment was accordingly made of this amount, plus interest thereon of $8,683.45. Since the taxpayer had originally reported and paid taxes in the total amount of $143,750.78 the addition of this deficiency brought taxpayer's total tax liability for 1942 to $188,801.13. Pursuant to the provisions of Section 3806, the taxpayer's returns were recomputed to eliminate the excessive profits of $50,000.00 repaid to the United States under the renegotiation contract and to reflect the tax credit of $41,320.00, leaving an adjusted tax liability of $147,481.13 for 1942. Including the original tax paid of $143,750.78, a net total of tax and interest in the amount of $157,138.78 was eventually paid to satisfy this 1942 tax liability.

It is contended by taxpayer that the Commissioner erroneously computed the

additional taxes on income that included the $50,000.00 excessive profits; that the $50,000.00 did not represent income, and if it had been excluded before computing the additional taxes, the additional assessment would have only been $3,730.35 taxes and $851.13 interest, representing the difference between $143,750.78 originally reported and paid, and $147,481.13, the taxpayer's ultimate tax liability; that if the tax had been computed in this manner, the total net tax and interest due would have been $148,332.-26 instead of $157,138.78 actually paid, or a difference of $8,806.52, the alleged overpayment here. In other words, the taxpayer's computation has the effect of retroactively excluding the $50,000.00 excessive profits to the timely filing of the return, operating as an offset to income subsequently included, thus eliminating a greater portion of the interest on the additional tax. It is apparent that taxpayer's proposed computation does no more than reduce the total liability by approximately the amount of interest paid on the deficiency taxes assessed. The trial court so held, being of the view that such alleged overpayment was not taxes but legitimate interest due the United States, and this is an appeal from that holding.

■ It is of course true that the Commissioner had the duty to examine the taxpayer's 1942 returns, and if it was determined that they did not truly reflect income, proper adjustments and deficiency assessments of tax and interest should be made accordingly. Whether the tax credit resulting from the renegotiation agreement in some way changes this regular method of computing deficiency tax and interest, must be determined from the context of Section 3806. That Section provides that in case of renegotiation of a war contract, when a "(a)(1) * * * taxpayer is required to pay or repay to the United States or any agency thereof the amount of excessive profits eliminated or the amount of excessive profits eliminated is applied as an offset against other amounts due the taxpayer, the part of the contract or subcontract price which was received or was accrued for the prior taxable year shall

be reduced by the amount of excessive profits eliminated. * * * (b) Credit against repayment on account of renegotiation or allowance.—(1) General rule. There shall be credited against the amount of excessive profits eliminated the amount by which the tax for the prior taxable year under Chapter 1, Chapter 2A, Chapter 2B, Chapter 2D, and Chapter 2E, is decreased by reason of the application of paragraph (1) of subsection (a); * * *."

Appellee calls attention to the fact that this Section refers to "tax" and makes no provision for interest on the credit. It is contended in that connection that this merely grants relief in the form of a tax credit, but that such credit can be used only "against the amount of excessive profits" from war contracts; that it in no way affects or alters the return as originally filed, other than ascertaining from such return the amount of tax paid on the excessive profits, and to compute such tax credit, there must be a determination of the taxpayer's tax liability both before as well as after the elimination of the $50,000.00 excessive profits.

Although the facts are different, the situation here is analogous to Manning v. Seeley Tube & Box Co., 338 U.S. 561, 70 S.Ct. 386, 389, 94 L.Ed. 346, and the reasoning of the court there seems equally applicable here. In that case, the taxpayer timely filed a return for 1941 and paid the tax as shown due thereon. In 1943, the Commissioner assessed deficiency taxes with interest for the taxable year 1941. Taxpayer subsequently filed its 1943 return, reflecting a net operating loss for that year. Under the carry-back provisions of the Internal Revenue Code, this loss was sufficient to completely abate the taxpayer's additional tax liability for 1941, but the court held that the subsequent cancellation of the duty to pay the assessed deficiency did not cancel in like manner the duty to pay interest on such deficiency. The court significantly stated that "From the date the original return was to be filed until the date the deficiency was actually assessed, the taxpayer had a positive obligation to the United States: a duty to pay its tax. * *

For that period the taxpayer, by its failure to pay the taxes owed, had the use of funds which rightfully should have been in the possession of the United States. The fact that the statute permits the taxpayer subsequently to avoid the payment of that debt in no way indicates that the taxpayer is to derive the benefits of the funds for the intervening period." The court reasoned that it would be impossible to foretell whether the taxpayer would be entitled to a carry-back credit in a future year, and he must therefore file his return and pay his tax without regard to such deduction; and that while in many respects the carry-back provision was equivalent to a de novo determination, it had no retroactive effect. There, as here, the taxpayer failed to pay taxes when they became due, and both subsequently received tax credits, one resulting from the renegotiation contract and the other from the carry-back. In each case, the total tax liability attached as of the date of the return. The fact that two years were involved in the Manning case and only one here, would not seem to distinguish them insofar as the liability for payment of interest is concerned.

Under the provisions of Section 3806, the amount of $50,000.00 to be repaid the United States under the renegotiation contract was to be reduced by the amount of tax previously paid thereon. In order to ascertain such credit, it was necessary to first compute the 1942 tax return as it should have been originally filed, that is, including the additional income, and then recompute the amount of tax after excluding the $50,000.00. That is exactly what was done. The taxpayer was entitled to a credit of $41,320.00, no more, and in conformity with Section 3806, the excessive profits of $50,000.00 was decreased by that amount. The renegotiation did not operate to wipe out any taxes or interest due, nor did it alter the total tax liability. Rather, it merely operated to decrease the amount of excessive profits to be repaid the United States by the amount of taxes previously paid.

The judgment is affirmed.