**NATIONAL BUILDERS, Inc.**

v.

**REYNOLDS.**

Civ. No. 3939.

United States District Court,
D. Minnesota, Fourth Division.
July 19, 1954.

S. H. Buttz, Alexandria, Minn., for plaintiff.

H. Brian Holland, Asst. Atty. Gen., Andrew D. Sharpe, P. S. McMahon, and A. A. Bowden, Special Assts. to the Atty. Gen. (George E. MacKinnon, U. S. Atty., and Alex Dim, Asst. U. S. Atty., St. Paul, Minn., of counsel), for defendant.

NORDBYE, Chief Judge.

This cause was submitted to the Court on the pleadings and a stipulation of facts.

The taxpayer, National Builders, Inc., brings this action against Reynolds seeking recovery of $13,425.88, with interest thereon from January 11, 1950, as an alleged overpayment of income and excess profits taxes for the year 1941, and for the sum of $9,101.69, with interest thereon from January 11, 1950, as an alleged overpayment of income and excess profits taxes for the year 1942.

The Government has intervened, and in its intervening petition seeks judgment against the taxpayer for the sum of $7,136.95 as the balance of excess profits taxes for the year 1943, with interest thereon from January 11, 1950, and for judgment in the sum of $11,056.75, income and excess profits taxes for the year 1945, with interest thereon from January 18, 1952.

The taxpayer cross-claims against the Government's intervening petition and demands judgment in the sum of $25,326.98 as an alleged overpayment of income and excess profits taxes for the year 1944, together with interest thereon from March 15, 1945.

In order to obtain an understanding of the somewhat involved issues which arise under the pleadings and stipulation of facts herein, consideration of the taxpayer's income taxes and computations thereof for the years 1941 to 1952 seems necessary. However, we are concerned primarily with the taxes due the Government from this taxpayer for the year 1943 and the question as to whether or not the Government has applied credits thereon correctly. The controlling facts, therefore, with reference to these issues may be summarized as follows:

On March 16, 1944, the taxpayer filed its tax return disclosing net income of $144,686.67 and indicated a tax liability thereon of $115,749.34, which it paid. On June 13, 1944, an audit was made by a revenue agent, and it disclosed that the taxpayer had an income of $343,506.16 for the year 1943 and therefore there was a deficiency of tax in the sum of $162,015.85. On December 21, 1944, the Secretary of War issued a unilateral order determining the excessive profits on a war contract in which the taxpayer and two others as joint adventurers were engaged, and determined that the taxpayer's share of the excessive profits to be refunded was the sum of $201,250. On March 19, 1945, the taxpayer and the other members of the joint venture petitioned the Tax Court contesting the Secretary of War's determination of excessive profits and his authority with respect thereto. On March 24, 1945, the taxpayer paid to the Treasurer of the United States by reason of the Secretary of War's determination of excessive profits the sum of $86,554.77. Apparently this sum was arrived at by deducting from $201,250, the taxpayer's share of excessive profits, the sum of $115,749.34, which was the amount that the taxpayer had computed as its income and excess profits taxes for 1943. The sum of $1,054.11 was added as interest. On June 23, 1947, the taxpayer petitioned the Tax Court for a redetermination of its tax liability for the years 1942, 1943,

and 1944. On July 21, 1949, the Tax Court rendered its decision on the question of the taxpayer's tax liability for 1942, 1943, and 1944 and determined its net income for 1943 to be $200,580.76 and that there was a deficiency of tax in the sum of $43,897.88. This ruling was acquiesced in by the taxpayer and the Commissioner of Internal Revenue. The decision of the Tax Court is found in National Builders, Inc. v. Commissioner, 12 T.C. 852, and was entered on August 15, 1949. On January 11, 1950, the Commissioner assessed against the taxpayer a deficiency of $43,897.88 and interest thereon in the sum of $14,286.47 for the year 1943 and credited the taxpayer with a post-war credit of $4,355.12. In addition, the Commissioner credited against the deficiency an overassessment or overpayment of the 1941 taxes in the sum of $12,263.52 ($13,069.30 less $805.78, the latter item allegedly barred by the statute of limitations), and with the overpayment in the 1942 tax of $9,101.69. There was also refunded or repaid to the taxpayer interest on overassessments or overpayments in the sum of $7,069.63. On June 23, 1952, the overpayment of plaintiff's tax for 1944 in the sum of $25,326.98 was credited to the 1943 deficiency, leaving the sum of $7,136.95 as the balance due, and which is the sum the Government seeks to recover in its intervening petition as the balance due for excess profits taxes and interest for the year 1943. On October 15, 1951, the taxpayer and the Secretary of War entered into a so-called renegotiation compromise agreement, and in that agreement it was determined that the taxpayer's share of excessive profits, instead of $201,250, as originally determined by the Secretary, was the sum of $105,000. On May 15, 1952, the taxpayer received as a renegotiation refund, in pursuance of the compromise agreement, the sum of $64,-468.39, including interest in the sum of $785.12, which sum apparently was the share of refund interest paid by the taxpayer. In this settlement it should be noted that the parties stipulated as follows:

"Waiver of Interest. In further consideration of the premises, the Joint Venture agrees that it will not claim interest on any of the amount which may be due it as a refund under the terms of this compromise settlement."

When the Tax Court determined that the taxpayer's income for 1943 was $200,580.76, with a deficiency of tax in the amount of $43,897.88, it did so in complete disregard with respect to any determination of excessive profits or demands made thereon to the Secretary of War. This is evident from the following excerpt of the Tax Court's decision as noted in 12 T.C. on pages 859-860, as follows:

"What we have said so far we think serves to dispose of the only strict tax question raised in this proceeding. However, in determining the deficiency in this case, the respondent eliminated from the income of the petitioner and the joint venture the excessive profits repaid to the Government and treated the credit allowed petitioner under section 3806 incident to the renegotiation of its war contracts as in the nature of a rebate under section 271(b)(2) of the Internal Revenue Code, with a result that we do not think is contemplated by the statute.

"The correct tax liability of a taxpayer is, in the first instance, to be determined with complete disregard of the fact that the taxpayer may have repaid amounts representing excessive profits to the Government incident to renegotiation and in making the payments received the benefit of the credit provided for by section 3806(b)(1). Petitioner's tax liability for 1943 should be computed on the basis of the gross income, deductions, and net income as shown on the return, and such other adjustments as may be required,

including any resulting from the instant redetermination, so that the tax as finally computed meets the requirements of the statute. It follows that under this method the full amount of taxes paid by the petitioner should be applied against the total tax liability in determining the amount of any deficiency or overpayment, and the respondent should not, in this computation, treat the credits previously computed under section 3806(b)(1) as rebates within the definition contained in section 271 (b)(2). It is not until the tax liability as such has been correctly determined that we have a basis for the computation of the credit under section 3806, and if a credit has been allowed for renegotiation purposes prior to the final determination of the tax liability as such, then the credit must be regarded as tentative and must necessarily fluctuate up or down, dependent upon what is finally determined to be the petitioner's correct tax liability.

"The sole tax question presented for our consideration has been decided in favor of the taxpayer, and it might seem at first glance to leave the parties where they were. But it appears from the deficiency notice that there were other adjustments that were not contested which would serve to affect petitioner's tax liability and so a recomputation becomes necessary.

"We think what we have said serves to dispose of this case and other questions raised in the pleadings as to the proper method of applying the credit need not be discussed. The application of the credit under section 3806 is an administrative one, and as the determination of petitioner's tax liability is in nowise affected by the manner of the application of the credit, there is no occasion for us to discuss it in this opinion.

"Whether the determination of excessive profits made by the Under Secretary of War is increased or decreased by the decision of this Court in the renegotiation proceedings, it will in no way affect the petitioner's tax liability for 1943 which we have here finally determined. Any findings as to excessive profits different from that initially made by the Under Secretary of War will be given final effect by a recomputation of the credit under section 3806. As we have previously stated, until that time, any credit allowed the petitioner under section 3806 will necessarily be tentative, a final credit being determinable only at such time as a final determination of the excessive profits is made."

Consequently, it seems clear that, in determining the amount of taxpayer income of this taxpayer for the year 1943, the Tax Court did so regardless of any pending renegotiation of any war profits and regardless of any payments that might have been made to the Secretary of War. However, the taxpayer takes issue with this method of determining the 1943 taxes. It contends that the Commissioner of Internal Revenue should not make its computation on all the income that the taxpayer received in 1943, but only on the income remaining after the elimination of the excessive profits which had to be refunded to the United States. Of course, the taxpayer heretofore has litigated its 1943 tax liability before the Tax Court and it would seem that that decision is res judicata as to the position which the taxpayer now advances. And moreover, it is clear that the Tax Court correctly construed Section 3806 of the Internal Revenue Code, 26 U.S.C.A. § 3806, which provides:

"Mitigation of effect of renegotiation of war contracts or disallowance of reimbursement

"(a) *Reduction for prior taxable year*

"(1) *Excessive profits eliminated for prior taxable year.* In the case of a contract with the United States

or any agency thereof, or any subcontract thereunder, which is made by the taxpayer, if a renegotiation is made in respect of such contract or subcontract and an amount of excessive profits received or accrued under such contract or subcontract for a taxable year (hereinafter referred to as 'prior taxable year') is eliminated and, in a taxable year ending after December 31, 1941, the taxpayer is required to pay or repay to the United States or any agency thereof the amount of excessive profits eliminated or the amount of excessive profits eliminated is applied as an offset against other amounts due the taxpayer, the part of the contract or subcontract price which was received or was accrued for the prior taxable year shall be reduced by the amount of excessive profits eliminated. * *

\* \* \* \* \* \*

"(b) *Credit against repayment on account of renegotiation or allowance*

"(1) *General Rule.* There shall be credited against the amount of excessive profits eliminated the amount by which the tax for the prior taxable year under Chapter 1, Chapter 2A, Chapter 2B, Chapter 2D, and Chapter 2E, is decreased by reason of the application of paragraph (1) of subsection (a); \* \* \*.

\* \* \* \* \* \*

"(c) *Credit in lieu of other credit or refund.* If a credit is allowed under subsection (b) with respect to a prior taxable year no other credit or refund under the internal-revenue laws founded on the application of subsection (a) shall be made on account of the amount allowed with respect to such taxable year. If the amount allowable as a credit under subsection (b) exceeds the amount allowed under such subsection, the excess shall, for the purposes of the internal-revenue laws relating to credit or refund of tax, be treated as an overpayment for the prior taxable year which was made at the time the payment, repayment, or offset was made."

This section was construed in Standard Roofing and Material Co. v. United States, 10 Cir., 199 F.2d 607. In that case there was a deficiency of tax for the year 1942 and the question arose as to the application of a credit under Section 3806 against the excessive profits from a war contract. Apparently the taxpayer attempted to reduce his taxable income by the amount of the excessive profits determined, in order to avoid deficiency interest. The Commissioner, however, determined the deficiency of tax without deducting the excessive profits, and the court stated, 199 F.2d at page 610:

"Under the provisions of Section 3806, the amount of $50,000.00 to be repaid the United States under the renegotiation contract was to be reduced by the amount of tax previously paid thereon. In order to ascertain such credit, it was necessary to first compute the 1942 tax return as it should have been originally filed, that is, including the additional income, and then recompute the amount of tax after excluding the $50,000.00. That is exactly what was done. The taxpayer was entitled to a credit of $41,320.00, no more, and in conformity with Section 3806, the excessive profits of $50,000.00 was decreased by that amount. The renegotiation did not operate to wipe out any taxes or interest due, nor did it alter the total tax liability. Rather, it merely operated to decrease the amount of excessive profits to be repaid the United States by the amount of taxes previously paid."

█ The amount of so-called excessive war profits under the compromise settlement, in so far as this taxpayer is concerned, totaled $105,000. When the 1943 taxes were computed, the excessive profits were properly included in the net income and tax assessed thereon. How-

ever, in determining the amount to be paid, and applying Section 3806, the amount of tax which was paid on the excessive profits to be refunded would have to be deducted from such amount and the net amount paid to the Secretary of War. In other words, the so-called amount of excessive war profits would not affect the tax liability of the taxpayer or its duty to pay the tax when due, nor does it affect the right of the Commissioner to charge interest on any deficiency. The law requires that the tax deficiency bear interest. And it seems clear that the taxpayer is obligated to pay the tax computed on the total amount of his taxable income regardless of the pendency of any renegotiation with reference to war contracts.

■ Admittedly, the matter may seem more complicated here because on March 24, 1945, the taxpayer paid the Secretary of War $86,554.77 after receiving the benefit of the tentative credit granted under Section 3806. And the taxpayer presumably took greater credit than it was finally entitled to under Section 3806 when it paid the Secretary of War $86,554.77 because that credit was predicated upon the assumption that the taxpayer would have to pay the full $201,250 as determined by the Secretary of War. The taxpayer points out, however, that after one excludes the excessive profits, the net income for the year 1943 is only $95,580.76. This is arrived at, according to the taxpayer, by deducting the $105,000 excessive war profits from the net income as determined by the Tax Court of $200,580.76. And the taxpayer further points out that the tax on this sum, that is, $95,580.76, is $76,464.62, less a post-war credit of $7,369.05, or a net of $69,095.57. It argues, therefore, that in that the taxpayer has paid with its 1943 return the sum of $115,749.34, that sum is more than the net taxable income for the year 1943 as adjusted above, and urges, therefore, that there can be no tax deficiency and hence no interest. The difficulty with the taxpayer's position is that it refuses to recognize that the Tax Court

has correctly computed its 1943 tax and the deficiency which accrued *on the taxable income* the taxpayer received for that year. And if it had paid the tax when due, there would have been no deficiency and no interest thereon. The 1943 income must be determined on the receipts by the taxpayer for that year, uninfluenced by excessive war profits adjustments for that year made several years thereafter. The fact that moneys were paid to the Secretary of War as excessive war profits in an amount greater than was established ultimately as the correct amount, does not give the taxpayer any right to offset such amounts against taxes due or interest accruing on such taxes. In other words, there is no statutory authority for the application of any payment or overpayment in the renegotiation of excessive profits on a tax liability. And however anomalous the situation such as the above computations may present, there is no statutory basis for the taxpayer's position that a repayment pursuant to the determination of excessive profits on a war contract may be credited against the income for the year involved so as to reduce a tax determined upon the basis of taxpayer's income prior to the repayment, or to effect a disallowance of interest on the theory that the Government had in its possession taxes paid and renegotiation payment moneys which exceeded the income on which the deficiency is based. Section 3806 does not change or affect the method of computing income taxes. Plaintiff's suggestion that the taxes for 1943 should be computed on the income after deducting the excessive profits refunded to the Secretary of War is erroneous. The credit afforded by Section 3806 can only be lodged against the excess in war contracts which must be repaid. And it should be pointed out that if the taxpayer found itself in an unfortunate dilemma with reference to the problems which arose by reason of the excess war profits determination by the Secretary of War, it is itself responsible for its present predicament, at least in part, because it waived interest on the amount

that was refunded to it in the compromise settlement with the Secretary of War, and in doing so it deprived itself of a benefit that would be substantially equal to the interest that the Government now seeks to recover on the 1943 deficiency.

■ The taxpayer complains that it has been disallowed a portion of its claim as to the overassessment for the year 1941; that is, plaintiff's claim for a credit for overpayment was $13,069.30 and the Government allowed $12,263.52 by reason of the carry-back of an operating loss from 1942 to 1941. The Government eliminated the sum of $805.78 because it concluded that that item was barred by the statute of limitations. But, as the Government points out, the fact that the Commissioner allowed part of the alleged overpayment does not furnish any proof as to the Government's liability as to the balance. The failure of the plaintiff to go forward with the burden of proof with respect to the disallowed item and to establish its right to this credit prevents any allowance of this item.

There is only one further phase of this litigation which suggests any comment in that the answer of the taxpayer to the Government's intervening petition admits the amount due on income and excess profits taxes for the year 1945. There are certain post-war credits given the taxpayer as to which it contends it is entitled to interest. The Court finds no basis in the stipulation of facts or in any statute which would justify the relief which the taxpayer seeks in this regard.

It follows from the foregoing that the taxpayer's amended complaint and cross-claim against the Government must be dismissed and that judgment should be entered for the Government as prayed for in its intervening petition, together with costs and disbursements allowed by law. Findings of fact and conclusions of law consistent herewith may be presented upon ten days' notice. An exception is allowed.