article is sound and workable, therefore an integral part of the sales price.

The taxpayer should not be permitted to escape the tax as to the cost incident to that trade custom, but only as to the cost incident to supplying a service above and beyond that usual in the trade or business.

LARAMORE, Judge, joins in the foregoing concurring opinion.

WHITAKER, Judge (dissenting).

I dissent for the reasons given in the dissenting opinion in General Motors Corp., v. United States, 121 F.Supp. 932, 128 Ct.Cl. 465.

that the courts of admiralty had jurisdiction thereof,

It is ordered this twelfth day of July, 1956, that the former decisions rendered on March 6, 1956, 139 F.Supp. 301, which overruled defendant's motions to dismiss or for summary judgment are set aside and the petitions are now dismissed for the lack of jurisdiction, all as more fully set forth in the opinion rendered this day in the case of Smith-Johnson Steamship Corp. v. United States, Ct.Cl., 142 F.Supp. 367.

**MARINE TRANSPORT LINES, Inc., and Marine Navigation Company, Inc.,**

v.

**The UNITED STATES.**

**PACIFIC FAR EAST LINE, Inc.,**

v.

**The UNITED STATES.**

**BLACK DIAMOND STEAMSHIP CORP.**

v.

**The UNITED STATES.**

Nos. 242-55, 262-55, 314-55.

United States Court of Claims.
July 12, 1956. ·
Writ of Certiorari Denied
Dec. 3, 1956.
See 77 S.Ct. 227.

**JACOBS BROTHERS, Inc.**

v.

**The UNITED STATES.**

No. 630-53.

United States Court of Claims.
Nov. 7, 1956.

PER CURIAM.

It appearing to the court that on June 11, 1956, the Supreme Court in the case of Sword Line, Inc., v. United States, 351 U.S. 976, 76 S.Ct. 1047, 100 L.Ed. 1493, decided that causes of action of the nature stated in the petitions in these cases were of a maritime nature and, hence,

Morris Fedder, Baltimore, Md., for plaintiff. Martin Fedder, Baltimore, Md., was on the brief.

J. W. Hussey, Washington, D. C., with whom was Asst. Atty. Gen. Charles K. Rice, for defendant. Andrew D. Sharpe, Washington, D. C., was on the brief.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

MADDEN, Judge.

The plaintiff filed fraudulent income and excess profits tax returns for each of the years 1943, 1944, and 1945. The frauds were discovered and the Commissioner of Internal Revenue in 1951 assessed increased excess profits taxes for those years on the basis of the plaintiff's true income. He also, acting pursuant to section 293(b) of the Internal Revenue Code of 1939, 26 U.S.C. (1952 Ed.) § 293, assessed a 50 percent fraud penalty upon the deficiencies, that is, the difference between the excess profits taxes paid by the plaintiff, and those that it should have paid.

The result of the increase in the plaintiff's excess profits taxes was a decrease in its income taxes, since, under 26 U.S. C. (1940 Ed., Supp. IV) § 26(e)) a taxpayer was entitled to a credit on its normal tax net income of an amount equal to its adjusted excess profits net income. The Commissioner of Internal Revenue, therefore, at the same time that he assessed the deficiencies and interest and fraud penalties relating to the plaintiff's excess profits taxes, allowed and credited to the plaintiff the overassessments of its income taxes which resulted from the increase in its excess profits taxes. The plaintiff paid the amounts determined by the Commissioner.

The plaintiff filed claims for refund of parts of the amounts paid, asserting that in determining the amounts to which the 50 percent fraud penalty should be applied, the Commissioner should have deducted the overpayments of income tax from the deficiencies in excess profits tax.

The Government urges that the excess profits tax and the income tax were separate taxes. It cites Babcock and Wilcox Co. v. Pedrick, 2 Cir., 212 F.2d 645, and W. G. Duncan Coal Co. v. Glenn, D.C.W. D.Ky., 120 F.Supp. 948, which hold that in determining the dates from which interest on deficiencies and overassessments should run, the two types of taxes should be treated as separate.

The plaintiff points to section 26(e), referred to above, which allows a credit in determining income tax net income of the amount of a taxpayer's adjusted excess profits net income. It cites section 710(a) (1) (B), which provides that the income tax and the excess profits tax added together should not exceed 80 per centum of the taxpayer's surtax net income.

The sections of the Code defining "deficiency", section 271(a) (1, 2), 26 U.S. C. (1952 Ed.) § 271, and providing for the 50 percent fraud penalty, section 293 (b), 26 U.S.C. (1952 Ed.) § 293, appear in chapter I of the Code, which relates to income taxes. They are incorporated into subchapter E of chapter II, which re-

lates to the excess profits taxes here in question, by section 729(a), 26 U.S.C. (1940 Ed.) § 729, which says:

"All provisions of law (including penalties) applicable in respect of the taxes imposed by Chapter 1, shall, insofar as not inconsistent with this subchapter, be applicable in respect of the tax imposed by this subchapter."

 There is no clear mandate in the statutes which required the Commissioner of Internal Revenue to do what he did. The interest cases relied on by the Government involve statutes which provide definitely on what date taxes are due and from what date interest should be computed. In the instant case, if honest returns had been made, the plaintiff's income for income tax purposes would have been reduced because of the credit of its excess profits tax income, and only the taxes shown by combining the information shown on the two returns would have been payable. We think that when the two returns were corrected by the Commissioner to eliminate the results of the plaintiff's fraud, only the deficiency shown after considering the two corrected returns together should have been used as the sum to which to apply the fraud penalty.

The plaintiff also claims that the 10 percent postwar refund credit of excess profits taxes, provided for by sections 780 and 781 of the Code, as amended, 26 U.S.C. (1940 Ed., Supp. IV) §§ 780, 781, should have been deducted from the excess profits tax deficiency before the 50 percent fraud penalty was applied to it. This contention concerns only the taxes for the year 1943, since the Commissioner did make the deduction for the years 1944 and 1945. The cited sections provided that if the excess profits taxes were paid before July 1, 1945, the taxpayer should be given a non-interest-bearing, nonnegotiable bond of the United States for the amount of the refund, payable on the cessation of hostilities in the then current war; but if the tax was paid after July 1, 1945, the refund should be made in cash.

At the time the plaintiff's return for 1943 was made, even if the return had been a non-fraudulent one, the plaintiff would not have received the 10 percent post-war deduction either in cash or by credit. It would have received a bond, not payable until an undetermined time in the future. On a return which was later shown to have involved a deficiency, the deficiency would not have been decreased or otherwise affected by the Government's bond. We conclude, therefore, that the 50 percent fraud penalty was properly applied to the 1943 excess profits tax deficiency, as reduced by the income tax overassessment, but without any reduction on account of the 10 percent postwar refund credit. Stein v. Commissioner, 25 T.C. 940, 963.

The plaintiff is entitled to recover and judgment will be entered to that effect. The amount of the judgment will be determined in further proceedings, pursuant to Rule 38(c), 28 U.S.C.A.

It is so ordered.

JONES, Chief Judge, and LARAMORE, WHITAKER and LITTLETON, Judges, concur.

---

**Robert L. HOLCOMB**

v.

**The UNITED STATES.**

No. 97–55.

United States Court of Claims.
July 12, 1956.
Writ of Certiorari Denied
Dec. 3, 1956.
See 77 S.Ct. 228.

